Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 5425 | **DATE** | 11/14/2000 |
| **CASE TITLE** | Sally Naeem vs. McKesson Drug Company, Inc., et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 11/30/00 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's Motion for Summary Judgment [64] is granted as to Count II of the Second Amended Complaint, and as to Count I to the extent that it states a claim for a pattern of sex discrimination. The motion is denied as to Count I in all other respects, and as to Count III. This case is set for status on Thursday, November 30, 2000 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: RJ

Date/time received in central Clerk's Office

number of notices: 3
date docketed: NOV 16 2000
docketing deputy initials: UM
date mailed notice: NOV 16 2000
mailing deputy initials: UM

Document Number: 93

FILED FOR DOCKETING
00 NOV 16 AM 9:06

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SALLY NAEEM, | ) |
|            Plaintiff, | ) |
| v. | ) No. 95 C 5425 |
| McKESSON DRUG COMPANY, INC., HANK WEINMASTER and DAN MONTREUIL, | ) Judge Joan B. Gottschall |
|            Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sally Naeem has brought suit under Title VII against her former employer, McKesson Drug Company, alleging that she was a victim of harassment and discrimination by the company after she rejected her supervisor's sexual advances. In Count I of her complaint, Naeem claims that McKesson, in denying her a promotion, unlawfully retaliated against her for rejecting the advances of the supervisor, Gerald Moultry, and for complaining about the advances. Count I also alleges that the promotion denial was part of a pattern of discrimination against women at McKesson. In Count II, Naeem claims that her discharge from McKesson was in retaliation for her filing of an EEOC charge regarding the earlier promotion denial. Count III states a claim for the intentional infliction of emotional distress arising from McKesson's treatment and eventual termination of Naeem. McKesson has moved for summary judgment on all three counts.

## Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In a footnote, McKesson challenges Naeem's sex discrimination claim, arguing that the claim should not be considered by the court because it is outside the scope of her two EEOC charges, and because Naeem testified that her charges against McKesson involved allegations of retaliation only. In Count I of her complaint, Naeem alleges that McKesson denied her a promotion because of her sex, and that the decision was part of a pattern and practice of discrimination against women by McKesson. In Naeem's first EEOC charge, she checked only the "retaliation" box, and her explanation of the claim underscored its narrow scope. She alleged that she "was discriminated against because of my sex, female, and retaliated against . . . in that I was sexually harassed and denied a promotion for rejecting my supervisor's sexual advances." (10/20/94 EEOC Charge) Naeem's second charge alleged only that she was retaliated against because she filed the first EEOC charge.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Allowing the complaint "to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Id.* Because most EEOC charges are completed by laypersons, not lawyers, the test for determining whether an EEOC charge

2

encompasses the claims in a complaint provides the plaintiff with "significant leeway." *Id.* Title VII claims set forth in a complaint are cognizable if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)).

Naeem's EEOC charges make no mention of a pattern or practice of sex discrimination by McKesson, nor do they suggest in any way that McKesson discriminated against other women based on their gender. In a similar context, it has been observed that "retaliation and discrimination are separate and distinct wrongs," given that "the very gist of a retaliatory harassment action is that the employer has 'lashed out' against an employee for filing discrimination charges, not out of animosity for the employee's race or national origin." *Nair v. Bank of Am. Illinois*, 991 F. Supp. 940, 954 (N.D. Ill. 1997); *see also Lalvani v. Cook County*, No. 98 C 2847, 2000 WL 198459, at *5 (N.D. Ill. Feb. 14, 2000) ("Because Lalvani's retaliation claim in his EEOC charge does not encompass the discriminatory animus alleged in his disparate treatment claim in this case, the Court finds the two claims are not reasonably related and do not grow out of the same allegations."). Naeem's first EEOC charge clearly alleges that McKesson retaliated against her and discriminated against her based on her gender. However, without any indication that Naeem's claims were intended to encompass broader allegations of a pattern of sex discrimination by McKesson, rather than conduct targeting Naeem in particular, the court cannot find that her claim alleging a pattern of sex discrimination is reasonably related to the claims set forth in her EEOC charges. Summary judgment is awarded to McKesson to the extent that Count I purports to state a claim for a pattern of sex discrimination by McKesson, rather than a claim for retaliation and discrimination against Naeem in particular.

3

McKesson argues that summary judgment is also warranted on Naeem's retaliation claims because she cannot establish a prima facie case of retaliation or demonstrate pretext. In order to establish a prima facie case of Title VII retaliation, a plaintiff must show that 1) she engaged in statutorily protected expression; 2) she suffered an adverse action by her employer; and 3) there is a causal link between the protected expression and the adverse action. *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 479 (7th Cir. 1995). In order to demonstrate the causal link, the plaintiff must demonstrate that her employer would not have taken the adverse action "but for" the protected expression. *Id.* After the plaintiff establishes a prima facie case, the burden of production shifts to the employer to come forward with a legitimate, non-retaliatory reason for its actions. *Id.* If the employer rebuts the plaintiff's prima facie case, the plaintiff has the opportunity to show that the employer's proffered reasons are pretextual. *Id.*

McKesson contends that Naeem's first retaliation claim fails because she has not shown a causal connection between her alleged protected activity – her rejection of Moultry's sexual advances and her complaint to McKesson about those advances – and McKesson's subsequent decision not to promote her. According to McKesson, because Naeem did not complain to McKesson until after the promotion decision had been made, she could not have been denied promotion in retaliation for the complaint. Naeem contends that because Moultry was her supervisor, her complaint to him suffices as a complaint to McKesson. Naeem also alleges that she complained to Bobbi Kroft, Rita Lupo and Stephanie Kazlauskas.

Given the nature of Naeem's claim, the court agrees that her complaint to Moultry was a sufficient factual predicate for the subsequent retaliation. After all, Moultry is the alleged source of the retaliation. If Naeem had alleged that Moultry's supervisors were responsible for denying

4

her the promotion, then her complaint to Moultry, standing alone, would not have provided the company with the knowledge necessary for a subsequent act of retaliation to make sense. Because the evidence establishes that Moultry, at a minimum, played a role in the promotion denial, his knowledge of Naeem's protected conduct is sufficient.

McKesson also argues that the retaliation claim fails because while Moultry was the only member of the five-person panel responsible for the promotion decision who was capable of retaliating against Naeem, in reality Moultry was the only panel member who supported Naeem's candidacy for the position. Naeem argues that Moultry was the decision-maker in the promotion process. Even if the decision was handled by committee, Naeem contends that Moultry "poisoned Mrs. Naeem's chances by falsely disparaging her in the four months before, and then during, the promotional consideration." (Resp. at 21) Naeem points to the deposition testimony of Jeanette Maggio, a member of the committee, as establishing that Moultry disparaged Naeem before the promotion process, stated that she was not qualified for the position during the promotion process, and lied about interviewing Naeem for the promotion. Maggio testified that she concluded that Naeem was not qualified for the position based on what Moultry told her. (*See* Maggio Dep. at 154)

McKesson's contention that Moultry merely confirmed complaints about Naeem's performance that originated with other employees is unconvincing. Maggio testified that "we told [Moultry] that if you had to say was [Naeem] performing all the tasks and accountabilities of her job in a satisfactory manner could you answer yes, and he said no." (*Id.*) Regardless of where the complaints regarding Naeem originated, the jury may conclude that Moultry's statements lent the complaints legitimacy in the eyes of panel members. If the jury concludes

5

that Moultry disparaged Naeem in retaliation for her rejection of, and subsequent complaints about, his sexual advances, Naeem may be able to establish a causal connection between her protected conduct and the denial of her promotion. *See Dey v. Colt Constr. & Dev. Corp.*, 28 F.3d 1446, 1459 (7th Cir. 1994) (denying summary judgment where employee with discriminatory animus "provided factual information or other input that may have affected the adverse employment action").

McKesson also argues that Naeem has failed to produce evidence that McKesson's stated reason for denying her the promotion – its belief that she was not the best candidate for the position – was a pretext for retaliating against Naeem based on her rejection of Moultry's sexual advances. In response, Naeem points to her previous experience in a similar position and her excellent evaluations just before the promotion process. She also argues that McKesson's criticisms of her work are suspect because they were created after the fact, in response to the EEOC charge.

In light of the evidence that Moultry disparaged Naeem before and during the promotion process, the court cannot disentangle the panel's conclusions regarding the candidates' qualifications from Moultry's potentially unlawful retaliatory acts. While the jury may conclude that the panel's promotion decision was based on legitimate job performance factors, the jury could find that the panel was influenced by false and disparaging information regarding Naeem that was provided by Moultry in retaliation for Naeem's complaint about his advances. The court cannot find as a matter of law that Naeem will be unable to establish pretext, and thus McKesson's motion for summary judgment is denied as to Naeem's retaliation claim set forth in Count I.

McKesson challenges Naeem's second retaliation claim on the ground that she cannot establish a causal connection between her filing of an EEOC charge in October 1994 and her February 1996 discharge from the company. Naeem insists that "the temporal link is in fact quite strong because of the shortness of time between the EEOC's dismissal and defendants' retaliation." (Resp. at 24) Naeem also alludes to "other compelling evidence demonstrating that defendants retaliated against Mrs. Naeem once the EEOC denied her complaint." (*Id.* at 25) According to Naeem, it was shortly after the EEOC's denial that Maggio instructed Hartley, Montreuil and Weinmaster to begin documenting supposed deficiencies in Naeem's job performance, and that they began imposing onerous job demands on her, harassed and tolerated harassment of her, and refused to accommodate the demands of her job.

In determining a causal link between a plaintiff's protected conduct and her termination, "[t]he obvious place to start is the temporal sequence between the two; oftentimes it is unnecessary to look any further." *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998). A "substantial time lapse between the events is counter-evidence of any causal connection." *Johnson*, 70 F.3d at 480; *see also Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1115 (7th Cir. 1992) (observing that a lengthy period of time "discount[s] the causal connection between the two events").

Naeem's focus on the timing of the EEOC's dismissal of her charge is problematic. She has failed to explain why McKesson would retaliate against her because the EEOC dismissed her charge. Rather, any retaliation would logically stem from Naeem's filing of the charge in the first place. In evaluating the temporal sequence in a retaliation claim, the relevant times are the protected expression and the adverse employment action. *See Paluck v. Gooding Rubber Co.*,

7

221 F.3d 1003, 1010 (7th Cir. 2000) ("In considering whether the timing of an adverse employment action gives rise to an inference of discrimination, the critical inquiry is . . . the time lapse between the adverse action and the protected expression."). Here, the protected expression – Naeem's filing of the EEOC charge – occurred sixteen months before her discharge. While courts do allow a plaintiff to overcome a substantial time lapse by offering other compelling evidence, Naeem has offered no such evidence here. Moreover, even if Naeem's focus on the EEOC's dismissal of her charge is appropriate, she has failed to offer evidence of causation sufficient to overcome the eight-month gap between the June 1995 dismissal and her February 1996 discharge. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918-19 (7th Cir. 2000) (finding a three-month gap too long to raise inference of discrimination); *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999) (four months too long); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (five months too long).

Naeem simply recites her allegations of wrongful treatment and harassment, but points to no evidence suggesting that her discharge resulted from her filing of the EEOC charge. Rita Lupo's testimony that Naeem was harassed because of the EEOC charge is based solely on her observation that the harassment followed Naeem's receipt of the EEOC's response. (*See* Lupo Dep. at 81) In light of the gap between the charge's filing and the harassment, Lupo's conclusion that the two were linked is too speculative to allow a reasonable jury to find causation. Because Naeem has failed to offer causation evidence sufficient to overcome the significant temporal gap between her protected action and her discharge, the court grants McKesson's motion for summary judgment on Count II.

McKesson challenges Naeem's intentional infliction of emotional distress claim, arguing

that she "does not allege any behavior by her supervisors that is akin to the type of conduct that has been found to rise to the level of 'extreme and outrageous' under Illinois law." (Mtn. for Summ. J. at 14) Naeem contends that her supervisors "secretly organized to make her life at McKesson intolerable" by increasing her workload, harassing her, tolerating anonymous harassment of her by others, imposing physically dangerous tasks on her, and refusing to offer her assistance. Naeem argues that they took such actions knowing that she was pregnant and ill. After Naeem returned from medical leave, she contends that McKesson complained about records that were lost when McKesson tore down her office, put her on a pointless performance plan, falsely disciplined her for wrongs that they committed, harassed her while she was home caring for her sick child, and then fired her without cause. (Resp. at 29)

To succeed on an intentional infliction of emotional distress claim in Illinois, a plaintiff must prove that 1) the defendant's conduct was extreme and outrageous; 2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; 3) the defendant's conduct in fact caused severe emotional distress. *Strasburger v. Board of Ed., Hardin County Comm. Unit Sch. Dist. No. 1*, 143 F.3d 351, 358-59 (7th Cir. 1998), *cert. denied*, 525 U.S. 1069 (1999). Liability is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993). Further, the distress inflicted must be "so severe that no reasonable [person] could be expected to endure it." *Id.* at 703. Courts judge the facts of each case by an objective standard to determine whether the alleged conduct was extreme and outrageous. *Id.* In order for McKesson to be held liable, its conduct "must be such that the

'recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (quoting *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994)).

"In the employment context, Illinois courts have recognized that personality conflicts and questioning of job performance are 'unavoidable aspects of employment' and that 'frequently, they produce concern and distress.'" *Id.* (quoting *Heying v. Simonaitis*, 466 N.E.2d 1137, 1144 (Ill. App. Ct. 1984)). Because "nearly all employees would have a cause of action for intentional infliction of emotional distress" if such incidents were actionable, "Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious." *Id.* at 568.

The jury may conclude that McKesson's actions toward Naeem, taken together, amount to extreme and outrageous conduct under Illinois law. Requiring a woman in her seventh month of pregnancy to perform tasks that expose her to potential physical harm – as Naeem testified that McKesson did by forcing her to scale a warehouse staircase and maneuver underneath tables (*see* Naeem Dep. at 308-09) – without granting her requests for assistance could satisfy the standard if the jury concludes that McKesson acted with retaliatory animus. Against the background provided by Naeem's other examples of alleged mistreatment and harassment, the jury could infer such animus. While McKesson's evidence is subject to contrasting interpretations, it is up to the jury to make those interpretations. McKesson is not entitled to summary judgment on Count III of Naeem's complaint.

## Conclusion

For the above reasons, McKesson's motion for summary judgment is granted as to Count II of Naeem's complaint, and as to Count I to the extent that it purports to state a claim for a

pattern of sex discrimination. The motion is denied as to Count I in all other respects, and as to Count III.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: November 14, 2000